# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

UNITED STATES OF AMERICA,

v.  CIVIL ACTION NO. 5:22-cr-00227

ALAN J. DISOMMA, JR.

### MEMORANDUM OPINION AND ORDER

Pending are three objections to the Presentence Investigation Report ("PSR"). Defendant Alan J. Disomma, Jr. objects to the United States Probation Office's ("Probation") application of (1) a two-point enhancement for obstruction of justice, (2) an eight-point enhancement for the offense involving a minor who had not attained the age of 12, and (3) a five-point enhancement for engaging in a pattern of activity involving prohibited sexual conducted on at least two occasions. The matters are ready for adjudication.

### I.

On December 20, 2022, Mr. Disomma was charged in a three-count Indictment with (1) two counts of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) -- with Counts I and II pertaining respectively to fictional Minor Victims 1 and 2 -- and (2) Count III, which alleged traveling with intent to engage in illicit sexual conduct in violation of 18 U.S.C. §§ 2423(b) and 2423(e). The charges stem from Mr. Disomma allegedly (1) using cellular networks and the internet to knowingly attempt, persuade, induce, entice, or coerce two minors to engage in sexual activity, and (2) traveling from Payson, Arizona, to Charleston on or about December 18, 2022, for the purpose of engaging in illicit sexual conduct with the two minors. On February 23, 2024, Mr. Disomma was found guilty on all counts.

Mr. Disomma did not object to the draft PSR. However, the Government made several objections ultimately incorporated into the final PSR by Probation. Mr. Disomma objected to the final PSR in his sentencing memorandum. Prior to sentencing, the Court ordered supplemental briefing directing the Government to identify all points in the trial transcript during Mr. Disomma's testimony that it relied upon in proving the obstruction of justice enhancement. The Government's Response to the Order [ECF 184], was filed September 16, 2024. Mr. Disomma responded in opposition on September 23, 2024. [ECF 185].

Respecting the two-point enhancement for obstruction of justice, Mr. Disomma asserts he has consistently denied his guilt and merely exercised his constitutional right by proceeding to trial and testifying. Further, he claims his testimony was truthful regarding all material matters, specifically his intent. He explains that any inaccuracies in his recollection may be attributed to confusion, mistake, or even faulty memory. Mr. Disomma also contends perjury is only mentioned in the Guideline commentary, is outside the plain meaning of obstruction, and, relying upon the reasoning in *United States v. Campbell*, 22 F.4th 438, 443 (4th Cir. 2022), cannot serve as a basis for the perjury enhancement. The Government maintains that Probation correctly applied the two-point enhancement. It states that Mr. Disomma's testimony was false, directly contradicted by the evidence, and willful. The Government's position is supported by many citations to Mr. Disomma's testimony in the trial transcript and divided into the following five areas: (1) testimony regarding role playing/undercover sting, (2) testimony directly contradicted by the evidence, (3) testimony regarding the FBI, (4) testimony regarding Viagra, and (5) miscellaneous testimony.

Next, Mr. Disomma objects to the eight-point enhancement applied for the offense involving a minor who had not attained the age of 12. He claims the offense of conviction did not

involve a minor under the age of 12. The Government states the enhancement was properly applied, as Minor Victim 1 was under the age of 12 for at least the first five months of the timeframe charged in Count I.

Next, Mr. Disomma objects to the five-point enhancement applied for engaging in a pattern of activity involving prohibited sexual conduct on at least two occasions. Mr. Disomma asserts that the evidence does not support this finding. He asserts that, when viewed from a macro standpoint, his conduct is, in reality, a single event. The Government maintains the enhancement was properly applied and notes the facts of this exact undercover operation were found to support application of the enhancement in *United States v. Hodges*, No. 5:22-CR-00033, 2023 WL 2224467, at *2 (S.D.W. Va. Feb. 24, 2023).

## II.

### A.    *Obstruction of Justice*

*United States Sentencing Guideline* § 3C1.1 provides a defendant's offense level is increased by two levels "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct. "

In *United States v. Dunnigan*, 507 U.S. 87, 98 (1993), the Supreme Court held that if a defendant committed perjury at trial, the Constitution authorized enhancement of a defendant's sentence under U.S.S.G. § 3C1.1. It emphasized, however, that "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *Id.* at 95. Instead, "an accused may give inaccurate testimony due to confusion, mistake, or faulty

memory." *Id.* And though a defendant possesses a right to testify, it "does not include a right to commit perjury." *Id.* at 96.

Thus when "a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out." *Id.* The Court relied upon the federal criminal perjury statute, 18 U.S.C. § 1621, when defining perjury as "[a] witness testifying under oath or affirmation . . . [who] gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94.

"Relying on *Dunnigan*, [our Court of Appeals] and every other circuit ha[s] acknowledged that guideline [§] 3C1.1 can apply when a defendant perjures himself at trial." *United States v. Maynard*, 90 F.4th 706, 714 (4th Cir. 2024) (citing *United States v. Perez*, 661 F.3d 189, 193 (4th Cir. 2011)). "The commentary to § 3C1.1 makes clear that the phrase 'obstruct[ ] or impede[ ] . . . the administration of justice' in clause (A) of § 3C1.1 includes committing, suborning, or attempting to suborn perjury." *United States v. Jones*, 308 F.3d 425, 427–28 (4th Cir. 2002) (quoting U.S.S.G. § 3C1.1). "There are three elements necessary to impose a two-level enhancement for obstruction of justice based on the defendant's perjurious testimony: the sentencing court must find [by a preponderance of the evidence] that the defendant (1) gave false testimony; (2) concerning a material matter; (3) with willful intent to deceive." *Perez*, 661 F.3d at 192 (internal quotation marks omitted). "[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. It is enough, however, if the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.* at 193 (internal quotation marks and citation omitted). If a

4

district court does not make a specific finding as to each element of perjury, it must provide a finding that *clearly establishes* each of the three elements. *Id*. (emphasis in original).

As to the first factor, the Court has previously described Mr. Disomma's testimony as "incredible and entirely false in root and branch." [ECF 170 at 5]. Now, specifically when determining whether Mr. Disomma committed perjury for purposes of the enhancement, the Court focuses on Mr. Disomma's testimony concerning his alleged "reverse sting" operation.

At trial Mr. Disomma testified that he was on the subject fetish website because he "was trying to catch a pedophile." [ECF 184-1 at 8:7–10]. Mr. Disomma explained he was so graphic in his communication because he was "role playing." [ECF 184-1 at 13:8-16]. Mr. Disomma testified that he attempted to contact the FBI on two occasions as part of his operation. [ECF 184-1 at 15:9–25, 26:8–25]. Each time, he testified he was turned away by the FBI for not having enough information. [*Id.*]. As part of his "role playing," he sent the undercover officer links to pornography and asked that she show the videos to the children. [ECF 184-2 at 26:12–15]. This directly contradicts Mr. Disomma's testimony that he was trying to save the children.

The utter fabrication respecting the "reverse sting" operation is also illustrated by FBI Special Agent Jared Jankowski's testimony. He testified the advice putatively received by Mr. Disomma during his alleged communications with the FBI was directly contrary to agency policy. Special Agent Jankowski explained there are numerous means to identify a suspect in child exploitation cases when only a phone number and online profile exist.

Next, it is unquestionably the case that the testimony regarding the "reverse sting" operation involved a material matter. The testimony regarding his "reverse sting" was introduced to negate the elements of charged offenses, including the all-important matter of intent.

Third, Mr. Disomma knew the testimony was false when he recounted it. He

presented no evidence beyond his own, self-serving testimony to support the manufactured "reverse sting" operation. As noted, the testimony concerning his calls to the FBI was directly refuted by the testimony of Special Agent Jared Jankowski.

Finally, respecting the impact of the *Campbell* decision, Mr. Disomma does not discuss *United States v. Maynard*, 90 F.4th 706, 714 (4th Cir. 2024). In that case, our Court of Appeals distinguished *Campbell*. The Court of Appeals explained, "Unlike the guideline in *Campbell*, which defined 'controlled substance offense,' the obstruction enhancement here doesn't define 'obstruct[ ]' or 'impede[ ].' Thus, unlike in *Campbell*, the commentary's interpretation of the guideline as including perjury doesn't expand the guideline's reach beyond what's explicit in its text." *Maynard*, 90 F.4th at 714.

Inasmuch as Mr. Disomma willfully obstructed the administration of justice by offering perjurious testimony at trial, the Court **OVERRULES** the objection to the two-point enhancement under U.S.S.G. § 3C1.1.

B.   *Offense Involving a Minor Who Had Not Attained the Age of 12*

Pursuant to U.S.S.G. § 2G1.3(b)(5) the offense level is increased by eight levels "[i]f (A) subsection (a)(3) or (a)(4) applies; and (B) the offense involved a minor who had not attained the age of 12 years." Subsection (a)(3) provides for a based offense level of 28 if the defendant was convicted under 18 U.S.C. § 2422(b). U.S.S.G. § 2G1.3(a)(4).

Inasmuch as the first element is not at issue, the Court need only determine whether the offense involved a minor who had not attained the age of 12 years. Count I of the Indictment charged Mr. Disomma with the attempted enticement of Minor Victim 1 in violation of 18 U.S.C. § 2422(b). As to Count I, the Indictment stated the offense occurred from on or about December 10, 2021, through on or about December 18, 2022. [ECF 11]. In December 2021, at the beginning

of the undercover officer's exchange with Mr. Disomma, she disclosed her minor children were 11 and 13 years old. [Tr. Ex. 4 at 1]. While still communicating via the fetish website in December 2021, Mr. Disomma sent a message expressing his desire to have sexual intercourse with the "younger one" and explained he would "take it slow with her so the younger enjoys it." [*Id.* at 7]. On December 30, 2021, a message was sent by the undercover officer asking, "Do you think 11 is too young fornher [sic] to lose her virginity? Should I wait?" and Mr. Disomma responded, "I think she will be fine." [Tr. Ex. 5 at 11]. Also, in a message sent nearly five months later, on May 27, 2022, the undercover officer again referred to Minor Victim 1 as being 11 years old. [Tr. Ex. 5 at 20.]. For a period of time charged in Count I of the Indictment, Minor Victim 1 was under the age of 12. Thus, application of the enhancement is appropriate when calculating the adjusted offense level for Count I.

Moreover, the Court dismisses as meritless Mr. Disomma's assertion the jury never found as to Count I the subject minor was under 12. No finding as to the age of Minor Victim 1 was required, beyond the demonstrably proven fact that she had not attained the age of 18 years.

Accordingly, the Court **OVERRULES** Mr. Disomma's objection to the eight-point enhancement applied for the offense involving a minor who had not attained the age of 12 pursuant to U.S.S.G. § 2G1.3(b)(5).

C. *Engaging in a Pattern of Activity Involving Prohibited Sexual Conduct on at Least Two Occasions*

U.S.S.G. § 4B1.5(b)(1) provides for a five level enhancement to a defendant's base offense level "in any case in which [(1)] the defendant's instant offense of conviction is a covered sex crime, [(2)] neither §4B1.1 nor subsection (a) of this guideline applies, and [(3)] the defendant engaged in a pattern of activity involving prohibited sexual conduct." Here, neither the first nor

second elements are in controversy.

The Court need only determine whether the defendant "engaged in a pattern of activity involving prohibited sexual conduct." Prohibited sexual conduct includes "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)." U.S.S.G. § 4B1.5(b), comment. (n.4(A)). A defendant engages in a pattern of activity "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* at comment. (n. 4(B)). An occasion of prohibited sexual conduct may be considered for purposes of the enhancement regardless of whether it resulted in a conviction or occurred during the offense of conviction. *Id.*

As the Government notes in its sentencing memorandum, the Court previously applied the five-level enhancement for the same undercover operation used in Mr. Disomma's case. *See United States v. Hodges*, No. 5:22-CR-00033, 2023 WL 2224467, at *2 (S.D.W. Va. Feb. 24, 2023). In doing so, the Court found the defendant's conduct relating to the attempted enticement of the two minor victims was sufficient to establish a pattern of activities under the Guidelines. *Id.* Here, Mr. Disomma was convicted of (1) two counts of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) -- with Counts I and II pertaining respectively to fictional Minor Victims 1 and 2. By sending Minor Victims 1 and 2 gifts and conversing with them via email and phone, Mr. Disomma enticed them to engage in a sexual relationship with him. [Tr. Ex. 11B at 3; Tr. Exs. 14–16A–D]. The separate enticement of Minor Victim 1 and Minor Victim 2 is sufficient to establish a pattern under the Guidelines. Thus, the five-level enhancement is properly applied to Mr. Disomma.

Accordingly, the Court **OVERRULES** Mr. Disomma's objection to the five-point enhancement applied for engaging in a pattern of activity involving prohibited sexual conduct on at least two occasions pursuant to U.S.S.G. § 4B1.5(b).

## III.

Based upon the foregoing discussion, the Court **OVERRULES** all three of Mr. Disomma's objections to the PSR.

The Clerk is directed to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:     October 3, 2024

Frank W. Volk
Chief United States District Judge